JUDGE DAVID BRIONES

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2015 AUG 26  PM 3: 04

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | S E A L E D |
| | § | |
| Plaintiff, | § | CRIMINAL NO. EP-15-CR-_____ |
| | § | |
| v. | § | I N D I C T M E N T |
| | § | |
| ROBERTO LOYA, | § | **CT 1**: 18 U.S.C. §§ 1349 & 1343 – Conspiracy |
| CLARENCE COUNTERMAN, and | § | to Commit Wire Fraud |
| LEOPOLDO PARRA | § | **CTS 2-20**: 18 U.S.C. § 1343 – Wire Fraud |
| | § | |
| Defendants. | § | |
| | § | Notice of Demand for Forfeiture |
| | § | |
| | § | |
| | § | EP15CR1442 |

**COUNT ONE**
(18 U.S.C. §§ 1349 & 1343)
(Conspiracy to Commit Wire Fraud)

**INTRODUCTION**

AT ALL TIMES RELEVANT TO THIS INDICTMENT UNLESS OTHERWISE STATED:

A. Defendant **ROBERTO LOYA** was a principal in purported solar energy related companies and held himself out as an expert in investing in solar energy projects and other ventures.

B. Defendant **CLARENCE COUNTERMAN** held himself out to have superior knowledge and ability as an investor and a facilitator of investments in solar energy projects and other ventures.

1

C. Defendant **LEOPOLDO PARRA** served in various roles and positions in solar related companies described in this indictment.

D. Defendants **ROBERTO LOYA** and **CLARENCE COUNTERMAN** formed, used, and maintained and caused to be formed, used, and maintained the following entities:

   (1)    Renewable Energy Consultants, Inc. (REC) a Nevada Corporation formed on or about May 8, 2009.

   (2)    EP Solar Technologies, Inc. (EP Solar) a Nevada Corporation formed on or about May 28, 2009.

   (3)    LITTCE, Inc. (LITTCE) a Texas Corporation formed on or about December 18, 2009.

   (4)    Eco Global Corporation (Eco Global) a Texas Corporation formed on or about May 7, 2010.

E. The entities listed under section (D) had bank accounts with JP Morgan Chase Bank. All checks and other financial instruments deposited into a JP Morgan Chase Bank account in the State of Texas as part of the scheme and artifice to defraud and the conspiracy described in this indictment were imaged and the images then electronically transmitted to a JP Morgan Chase Bank processing unit outside the State of Texas.

F. Eco Global and **LEOPOLDO PARRA** had bank accounts with Wells Fargo Bank. All checks and other financial instruments deposited into a Wells Fargo Bank account in the State of Texas as part of the scheme and artifice to defraud and the conspiracy described in this indictment were electronically transmitted for processing to Wells Fargo Bank servers outside the State of Texas.

G.  REC had a bank account with Bank of America.   All checks and other financial instruments deposited into a Bank of America account in the State of Texas as part of the scheme and artifice to defraud and the conspiracy described in this indictment were imaged and the images electronically transmitted in interstate commerce to locations outside the State of Texas for clearing purposes.

H.  Gmail was an electronic mail (email) provider with no servers located in the State of Texas and thus any email from a Gmail account sent or received in Texas traveled by interstate wire.

I.  Defendant **CLARENCE COUNTERMAN** owned and operated a tax preparation business known as Taxrite.

## THE CONSPIRACY

Beginning on or about December 10, 2008, and continuing through and including on or about October 14, 2013, in the Western District of Texas, and elsewhere, the Defendants,

**ROBERTO LOYA,**
**CLARENCE COUNTERMAN, and**
**LEOPOLDO PARRA**

did combine, conspire, confederate and agree with each other to knowingly devise a scheme and artifice to defraud a number of victim investors, and to obtain money and property from a number of victim investors by means of materially false and fraudulent pretenses, representations, and promises, both by affirmative acts and by deceitful concealment of material facts, and for the purpose of executing such scheme and artifice to defraud, transmitted and caused to be transmitted, by means of wire, radio and television communication in interstate and

3

foreign commerce, writings, signs, signals, pictures, and sounds, including electronic transmissions generated by bank deposits and electronic mail communications, in violation of Title 18, United States Code, Section 1343.

### Scheme and Artifice

It was a part of the scheme and artifice to defraud that:

1. Defendants **ROBERTO LOYA** and **CLARENCE COUNTERMAN** exercised ownership and control over REC, EP Solar, LITTCE and Eco Global.

2. Defendant **LEOPOLDO PARRA** was affiliated with Eco Global in various capacities including as an officer of the corporation.

3. **ROBERTO LOYA** and **CLARENCE COUNTERMAN** promised victim investors high rates of return for investing in solar energy projects and other ventures through REC, EP Solar, LITTCE and Eco Global.

4. Using the companies listed above, **ROBERTO LOYA, CLARENCE COUNTERMAN** and **LEOPOLDO PARRA** operated a fraudulent investment scheme which paid returns to earlier investors from monies paid in by newer investors rather than from profits earned by these companies.

5. Through business relationships with tax preparation clients as well as other relationships, **CLARENCE COUNTERMAN** recruited, encouraged, induced and convinced victim investors to invest significant amounts of money and represented that this money would be put toward solar energy related projects and other ventures with REC, EP Solar, LITTCE and Eco Global.

4

6. The victim investors were given presentations by **ROBERTO LOYA** and **CLARENCE COUNTERMAN** about the purported solar energy related projects and other ventures in an effort to encourage, induce and convince them to invest with REC, EP Solar, LITTCE and Eco Global.

7. Victim investors would provide investment monies by way of personal checks and cashier's checks which were then deposited into bank accounts belonging to REC, EP Solar, LITTCE and Eco Global or, at times, directly into accounts belonging to the Defendants themselves which deposits generated interstate wires from the banks.

8. As part of the scheme and artifice to defraud, **ROBERTO LOYA** and **CLARENCE COUNTERMAN** would execute and cause to be executed what were termed "Qualified Commercial Notes" (QCNs) which purported to set forth the terms of the investment and the dates and amounts of payments due to the victim investors.

9. As part of the scheme and artifice to defraud, **ROBERTO LOYA** and **CLARENCE COUNTERMAN** would provide post-dated checks to the victim investors (sometimes dated in accordance with the dates and amounts set forth in the QCNs); these post-dated checks frequently would not clear or the victim investors were told by **CLARENCE COUNTERMAN** not to deposit them because of insufficient funds in the account upon which the checks were drawn.

10. As part of the scheme and artifice to defraud, a significant amount of the money invested by the victim investors was converted for personal use by **ROBERTO LOYA, CLARENCE COUNTERMAN,** and **LEOPOLDO PARRA** contrary to the agreements with the victim investors.

11. As part of the scheme and artifice to defraud, **CLARENCE COUNTERMAN** would ask for and receive from many of the victim investors "professional fees" separate from and in addition to the victim investors' invested monies for his services of providing and facilitating the investments.

12. A significant portion of the money invested by the victim investors was used to pay off earlier investors in the companies and projects described herein contrary to the stated investment purpose and agreements with victim investors.

13. As part of the scheme and artifice to defraud, **CLARENCE COUNTERMAN** would send email communications on a Gmail account to **ROBERTO LOYA** and **LEOPOLDO PARRA** setting forth how certain victim investors' investments were to be divided amongst the Defendants and earlier investors as opposed being invested in the agreed upon solar energy projects and other ventures.

14. At no time did **ROBERTO LOYA, CLARENCE COUNTERMAN** and **LEOPOLDO PARRA** disclose to victim investors that their investment money would be used to repay prior investors and be converted to **ROBERTO LOYA, CLARENCE COUNTERMAN,** and **LEOPOLDO PARRA'S** personal use.

15. Due to the scheme and artifice to defraud described in this indictment, and because little to no profits were earned by REC, EP Solar, LITTCE and Eco Global, at a certain point during the existence of the conspiracy there were no longer sufficient funds from new investors to pay obligations to the victim investors.

16. At various points in time, the victim investors demanded explanations as to the status of their failed investments and, in response, defendants **ROBERTO LOYA** and **CLARENCE COUNTERMAN** sent and caused to be sent to the victim investors,

6

emails to lull them into a false sense of security, to fraudulently assure victim investors

of the legitimacy of the projects and to avoid detection of the scheme and artifice to

defraud.  These e-mails related to purported investments in solar energy, mines, bonds

and other ventures and contained numerous false and fraudulent statements.

All in violation of Title 18, United States Code, Sections 1343 & 1349.


## COUNTS TWO THROUGH TWENTY
### (18 U.S.C. § 1343)
### (Wire Fraud)


The Introduction, and the Scheme and Artifice to Defraud alleged in Count One of this

Indictment are incorporated by reference in their entirety as if fully set out herein.

On or about the following dates, within the Western District of Texas and elsewhere,

Defendants **ROBERTO LOYA, CLARENCE COUNTERMAN** and **LEOPOLDO PARRA**,

in execution and in furtherance of the scheme and artifice to defraud and to obtain money by

means of false and fraudulent pretenses and representations, caused to be transmitted by means

of wire communication in interstate and foreign commerce writings, signs, signals, pictures and

sounds described below, with each transmission originating in the Western District of Texas and

each described transmission constituting a separate count:

| COUNT | DATE | WIRE DESCRIPTION |
|---|---|---|
| 2 | 9/3/10 | Victim investors S.M. and J.M.'s investment check in the amount of $15,500 posted after deposit into Eco Global's JP Morgan Chase Bank account number XXXXX9070 which was subsequently wired to a JP |

| | | |
|---|---|---|
| | | Morgan Chase Bank processing center located outside the State of Texas. |
| 3 | 9/17/10 | Victim investor M.G. Jr.'s investment cashier's check in the amount of $3,000 part of which was posted after deposit into **CLARENCE COUNTERMAN'S** JP Morgan Chase Bank account number XXXXX1542 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 4 | 9/28/10 | Victim investor B.Y.'s investment check in the amount of $3,132 posted after deposit into REC's JP Morgan Chase Bank account number XXXXX1677 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 5 | 10/29/10 | Victim investor A.C.'s investment check in the amount of $30,000 posted after deposit into REC's JP Morgan Chase Bank account number XXXXX8230 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 6 | 11/1/10 | Victim investor A.L.'s  investment cashier's check in the amount of $10,000 posted after deposit into REC's JP Morgan Chase Bank account number XXXXX8230 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 7 | 11/22/10 | Victim investor L.P.'s investment check in the amount of $5,000 posted after deposit into REC's JP Morgan Chase Bank account number |

| | | XXXXX1677 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
|---|---|---|
| 8 | 11/24/10 | Victim investors F.R. and S.R.'s investment check in the amount of $4,000 posted after deposit into REC's JP Morgan Chase Bank account number XXXXX1677 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 9 | 12/28/10 | Victim investors A.L. and A.E.'s investment check in the amount of $50,000 posted after deposit into REC's JP Morgan Chase Bank account number XXXXX1677 which was subsequently wired to a JP Morgan Chase Bank processing center located outside the State of Texas. |
| 10 | 2/18/11 | An email sent from **ROBERTO LOYA** on a Gmail account to **CLARENCE COUNTERMAN** and subsequently forwarded to several victim investors including A.D. and B.F., and which email was also sent directly to R.D. from **ROBERTO LOYA,** which email had an attachment containing false statements including that A.O., an individual affiliated with the Defendants' companies, had been in contact with high level United States Government officials regarding the Defendants' purported investment ventures. |
| 11 | 3/25/11 | Victim investor M.M.'s investment cashier's check in the amount of $21,400 posted after deposit into REC's  Bank of America account number XXXXXXXX2805  the image of which was subsequently wired |

| | | |
|---|---|---|
| | | to a location outside to State of Texas for archival purposes and a different location outside the State of Texas for clearing purposes. |
| 12 | 5/16/11 | An email sent from **ROBERTO LOYA** on a Gmail account to **CLARENCE COUNTERMAN** and either subsequently forwarded or sent directly to several victim investors including A.C., A.D., B.F., A.N. and M.T. which email had an attachment containing false statements including a statement that S.L.B. from the B. Foundation was Eco Global's client in an $80 million petroleum venture all in an effort to lull the victim investors into a false sense their overdue monies and payments would be forthcoming. |
| 13 | 8/16/11 | An email sent from **CLARENCE COUNTERMAN** on a Gmail account to **ROBERTO LOYA** and **LEOPOLDO PARRA** describing how the $20,000 investment of R.E. and L.E. was to be spent with the majority of the money going to the Defendants and earlier investors contrary to the agreement with R.E. and L.E. |
| 14 | 9/23/11 | Victim investor P.P.'s investment cashier's check in the amount of $2,500 posted after deposit into REC's Bank of America account number XXXXXXXX2805 the image of which was subsequently wired to a location outside the State of Texas for archival purposes and a different location outside the State of Texas for clearing purposes. |

| 15 | 9/23/11 | An email sent from **CLARENCE COUNTERMAN** on a Gmail account to **ROBERTO LOYA** and **LEOPOLDO PARRA** describing how the $2,500 investment of victim investor P.P. was to be spent with the majority of the money going to the Defendants and earlier investors contrary to the agreement with P.P. |
| --- | --- | --- |
| 16 | 12/21/11 | Victim investors J.D. and M.D.'s investment cashier's check in the amount of $5,000 posted after deposit into Eco Global's Wells Fargo Bank account number XXXXXX6668 the image of which was subsequently electronically transmitted for processing to a Wells Fargo Bank server located outside the State of Texas. |
| 17 | 12/21/11 | An email sent from **CLARENCE COUNTERMAN** on a Gmail account to **ROBERTO LOYA** and **LEOPOLDO PARRA** describing how the $5,000 investment of victim investors J.D. and M.D. was to be spent with the majority of the money going to the Defendants and earlier investors contrary to the agreement with J.D. and M.D. |
| 18 | 3/16/12 | An email sent from **ROBERTO LOYA** on a Gmail account to **CLARENCE COUNTERMAN** and subsequently forwarded to several victim investors including A.C., A.D., B.F. and A.N. which falsely stated that **ROBERTO LOYA** had engaged a company named D.G. for the purpose of vetting brokers for the Defendants' purported investment ventures. |

| 19 | 5/7/12 | An email sent from **ROBERTO LOYA** on a Gmail account to **CLARENCE COUNTERMAN** and subsequently forwarded to several victim investors including J.B., R.B., A.C., A.D., R.D., E.H., M.N., A.O. and P.T., Jr. stating that some investment paperwork had been forwarded to B.A. who worked for a government agency and that B.A. was using her position there to advance the Defendants' purported investment sales when in truth and in fact B.A. did not work for this government agency nor did she make these efforts as stated to advance any purported investment sales on behalf of the Defendants. |
| --- | --- | --- |
| 20 | 5/9/12 | Victim investor M.N.'s investment cashier's check in the amount of $13,000 posted after deposit into **LEOPOLDO PARRA'S** Wells Fargo Bank account number XXXXXX7180 the image of which was subsequently electronically transmitted for processing to a Wells Fargo Bank server located outside the State of Texas. |

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.     As a result of committing the offenses set forth in Counts One through Twenty of this Indictment, the United States of America gives notice to the defendants,

**ROBERTO LOYA,**
**CLARENCE COUNTERMAN, and**
**LEOPOLDO PARRA,**

of its intent to seek forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c), of any and all property, real and personal, which constitutes or is derived from

proceeds traceable to the violations, including but not limited to the following:

    a. **A sum of United States currency representing the amount of proceeds obtained as a result of the offenses, for which the defendants are jointly and severally and liable;**

    b. **Real property and appurtenances located at 11144 Pipecreek Court, El Paso, Texas 79936, with all improvements and attachments thereon;**

    c. **Real property and appurtenances located at 3017 Gourd St., El Paso, Texas 79925, with all improvements and attachments thereon;**

    d. **An undivided 0.9823% interest, held in the names of Kim M. Loya and Roberto Loya, in Unit 72C of Disney's Animal Kingdom Villas, a leasehold condominium, according to the Declaration of Condominium thereof as recorded in Official Records Book 9077, Page 4252, Public Records of Orange County, Florida, and all amendments thereto; and**

    e. **An undivided 0.9823% interest, held in the names of Kim M. Loya and Roberto Loya, in Unit 72C of Disney's Animal Kingdom Villas, a leasehold condominium, according to the Declaration of Condominium thereof as recorded in Official Records Book 9077, Page 4252, Public Records of Orange County, Florida, and all amendments thereto.**

<u>Substitute Assets</u>

If any of the above described forfeitable property, as a result of any act or omission of the

defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), of any other property of said defendants up to the value of the above-described forfeitable property.

A TRUE BILL.

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

_____
FOREPERSON OF THE GRAND JURY

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

BY:     _____
STEVEN R. SPITZER
Assistant U.S. Attorney